**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

NIKOLAI FEDAK, and NEW YORK YIMBY,                :
LLC                                                                          :          Civ. _____ (___)(___)
                                                                                :
                                                                                :
                              Plaintiff(s),                           :
                                                                                :
                  against                                              :          **COMPLAINT**
                                                                                :
                                                                                :
                                                                                :
YIMBY, INC. and DANIEL S. GEORGE           :          JURY TRIAL DEMANDED
                                                                                :
                                                                                :
                              Defendant(s).                       :
-----------------------------------------------------------------X

        Plaintiffs Nikolai Fedak ("Fedak") and New York YIMBY, LLC ("NY Yimby", and

together with Fedak "Plaintiff" or "Plaintiffs" respectfully), by and through its undersigned

counsel, for its Complaint against defendants YIMBY, Inc. ("Yimby"), and Daniel S. George

("George", and together with Yimby "Defendant" or "Defendants" respectfully) allege, on

knowledge as to its own actions, and otherwise upon information and belief, as follows:

### NATURE OF THE ACTION

        1.        This is an action for declaratory judgement, cancellation of the U.S. Trademark

Registration No. 4,746,866, unfair competition and false designation of origin under Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham

Act, 15 U.S.C. § 1125(c), unfair business practices under N.Y. GEN. BUS. LAW §349, injury to

business reputation; unfair competition under N.Y. GEN. BUS. §360-L, and common law

trademark infringement and unfair competition from Defendants' fraudulent registration of the

YIMBY Mark (word mark) on the Principal Register at the United States Patent and Trademark

Office, as well as unauthorized use of the YIMBY Marks, which include the YIMBY mark, the associated logo, and NEW YORK YIMBY mark (collectively, the "YIMBY Marks").

2.    By this Complaint, Fedak seeks to cancel the U.S. Trademark Registration No. 4,746,866, which was fraudulently obtained by Defendants.

3.    Plaintiffs seek injunctive and monetary relief.

## JURISDICTION

4.    This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a) and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.    Personal jurisdiction exists over Defendants because upon information and belief Defendants conduct business in New York and in this judicial district or otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

## VENUE

6.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants conduct business in this district and, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiffs in this district.

## PARTIES

7.    Plaintiff Nikolai Fedak is an individual with an address at 1 West Street, Apartment 2408, New York, New York, 10004. Fedak is the founder of NY Yimby and holds an undetermined number of shares in Yimby, Inc, but not less than 47,5%.

8.      Plaintiff New York YIMBY, LLC is a Delaware limited liability company with a principal place of business c/o Nikolai Fedak, 1 West Street, Apartment 2408, New York, New York, 10004.

9.      Upon information and belief, Defendant Yimby, Inc. is a New York corporation that transacts and engages in business and business relationships in the State of New York, and has a principal place of business located at 228 Park Avenue South, New York, New York, 10003.

10.     Upon information and belief, Defendant Daniel S. George is an individual with an address at 228 Park Avenue South, New York, New York, 10003. George is a shareholder of Yimby and is its Chief Executive Officer.

## FACTUAL BACKGROUND

### Fedak Is the Owner of Common Law Rights to the YIMBY Marks

11.     Fedak is the sole creator of the YIMBY Marks. He is also the sole creator of the weblog New York YIMBY ("New York YIMBY Blog").

12.     Fedak conceived the YIMBY Marks inspired by a computer game he played as a 6-year old, called "Sim City 2000,".  In this game, the anti-development groups were referred to as "NIMBYs", which was an acronym for "not in my back yard." Since Fedak was pro-development, he always thought he should be called "YIMBY" which to him meant, "yes in my back yard."  By his teens, Fedak was participating in the Internet forums discussing urban development, and by his time at Fordham University, where he began school in 2008 and obtained a four-year degree in three years due to 42 AP credits obtained during high school, he was writing academic papers on the subject of NIMBYism.

13.     Fedak adopted the YIMBY Marks to promote his everlasting passion about real estate development. By his teens he was actively engaged in online communities that discussed skyscrapers and real estate development, and when he came to New York City in 2008, he began following developers and their projects from up close. Fedak's enthusiasm for real estate inspired him to learn more about developers and their thinking and planning. He is self-taught in research, and by the Fall of 2011, Fedak reached a point where the volume of information he contributed to public online discourse warranted its own site.

14.     On or about September 28, 2011, Fedak created the New York YIMBY Blog with the slogan "saying "Yes In My Backyard" to new development" and began publishing the development information he both wrote himself and edited as its Owner and Editor-In-Chief on an Internet site he created called NewYorkYIMBY.blogspot.com. Often his research led Fedak to information that was more accurate ahead of newspaper reports on real estate development.

15.     Blogspot.com is a site affiliated with the Internet giant Google, and facilitates the creation of websites, sometimes known as weblogs. At the same time Fedak created New York YIMBY Blog, he opened an AdSense account for New York YIMBY Blog with Google, which allows payment through Google for advertising on Blogspot.com websites.

16.     In March 2012, Fedak opened Facebook and Twitter accounts for New York YIMBY Blog and an email account:NewYorkYIMBY@gmail.com.

17.     On May 21, 2012, Fedak purchased the domain name/URL NewYorkYIMBY.com ("NewYorkYIMBY.com").  *See* Exhibit A.

18.     By the spring of 2013, Fedak hired a freelance designer to create the logotype for the YIMBY Mark (design mark/logotype) and the "back end" Web design work for New York YIMBY Blog, so that he could move the website from Blogspot.com to WordPress. WordPress

is far more robust than Blogspot.com and able to handle larger volumes of traffic than Blogspot web pages. The logotypes created in this process are still in use by Fedak today, are renowned worldwide, and chief among them depict New York YIMBY Blog in a distinctive black and white format.

19.     At the end of May 2013, Fedak also purchased the domain name NYYIMBY.com in an effort to protect his intellectual property rights in the YIMBY name, and printed business cards using the New York YIMBY logo and his then company office address, at WeWork, on the 4th floor of 175 Varick Street, in Tribeca, New York City.

20.     In May of 2013, Fedak left his then-employer Surface Magazine, where he had begun working in October of 2012 as an editorial intern, graduating to publishing assistant. At this point, New York YIMBY Blog became Fedak's sole source of ongoing income and he began working on New York YIMBY Blog days and nights.

21.     In July 2013, Fedak began sending out newsletters every Saturday using an account he opened with a company that facilitated mass mailings on the Internet called MailChimp.

22.     In August 2013, Fedak made the first sale of an advertisement (referred to as an "ad buy") independent of AdSense, on the NewYorkYIMBY.com.

23.     In September, October and November 2013, Fedak focused on sending out dozens of proposals to real estate developers who might be interested in advertising and marketing their development projects on the NewYorkYIMBY.com Website, in a media kit that he had prepared specifically for prospecting New York YIMBY Blog advertising clients.

24.     From September of 2011 through December 2013, the traffic on the NewYorkYIMBY.com grew exponentially.

25.    By the end of 2013, New York Magazine listed Fedak and New York YIMBY Blog as one of the 50 best things about New York City, at Number 43. *See* Exhibit B.

26.    Fedak has been credited in New York Magazine and the New York Times with the first use of the NEW YORK YIMBY and YIMBY Marks in connection with a blog and website reporting on real estate development in New York City. *See* Exhibit C.

27.    On April 4, 2014, Constance Rosenblum wrote in a New York Times's article, describing Fedak as the creator and mastermind of New York YIMBY Blog thusly:

"Sure, Build It in My Back Yard":

> ln a city that is knee-deep in preservationists willing to do almost anything to keep new construction from erasing the past, it might seem surprising to find a young man who has made a career out of promoting the new.  But **Nikolai Fedak, the creator and mastermind of New York YIMBY**, a pro development blog turned website, does not find this strange at all.

25.    By December of 2013, Fedak was in contact with representatives of major developers about advertisements and marketing and he had his first major ad buy for $11,000 from The Steel Institute of New York and The Ornamental Metal Institute of New York, a contract which extended till the end of 2014. The Ornamental Metal Institute and The Steel Institute most recently signed a contract for 2017 for $11,000 with New York YIMBY LLC, its fourth consecutive year of doing business with Fedak.

26.    Fedak formed New York YIMBY LLC in Delaware on December 18, 2013. A copy of the Certificate of Formation for New York YIMBY LLC is annexed as Exhibit D.

27.    Plaintiffs offer their services throughout the United States under their well-known YIMBY Marks, and have done so since September 2011 (word marks), and 2013 (specific design mark/logotype), respectfully.

28.     The YIMBY Marks have been advertised and promoted and otherwise used in commerce throughout the United States, including this District, since at least as early as September 2011.

29.     By 2012 and most definitely by the end of 2013, real estate media and other major websites had already begun referencing "YIMBY" in stories when referring to the reporting and edited works of Nikolai Fedak at the New York YIMBY Blog.

30.     Plaintiffs have become widely known as a prime source of real estate advisory services, including their unique and copyrighted content created for the New York YIMBY Blog. Fedak has invested substantial time, money and resources in advertising and promotion of his YIMBY Marks, and has personally overseen and edited the entirety of the New York YIMBY Blog's contents over the course of their creation, beginning in 2011.

31.     Plaintiffs' success is due to Fedak's versed knowledge within the real estate arena.

32.     Fedak has continuously used the YIMBY Marks in commerce for over six years.

33.     As a result of its widespread, continuous and exclusive use of the YIMBY Marks: YIMBY and NEW YORK YIMBY to identify real estate development and promotional services and Fedak as their source, Fedak owns valid and subsisting common law rights to the YIMBY Marks.

34.     The YIMBY Marks are inherently distinctive, fanciful marks. NEW YORK YIMBY is especially distinctive with regular mention in major national publications, including the New York Times.

35.     The YIMBY Marks are well-known in the real estate development market, nationally, and internationally. Fedak has been credited as the founder and creator of the YIMBY Marks in outlets including the BBC and Swiss Radio.

36.     Fedak has invested substantial time, money and resources marketing, advertising and promoting real estate development and promotional services offered under the YIMBY Marks, which over the last six years have established enormous goodwill and are invaluable asset to Fedak.

37.     Fedak promotes his real estate development and promotional services heavily on social media, has spent an immense effort generating word-of-mouth-buzz, while trade publications like The Real Deal, a well-known publication in New York City, have also featured the NewYorkYIMBY.com website repeatedly and frequently.

38.     In March of 2017, The Real Deal wrote:

> Developers in this city looking to tackle a new project are used to battling an army of preservationists. But in 2011, they found an unexpected ally: Nikolai Fedak, a lanky, hyperkinetic 20-something whose website, New York YIMBY, became an unapologetic advocate of real estate development.

> "Zoning is the problem, not development in this city," Fedak said in a 2014 interview with Politico. "I think people don't really understand that." By then, he had become New York real estate's best known libertarian polemicist. He spent his days taking on zoning-hugging preservationists in public forums and made a pretty good living…"

39.     In The Real Deal's March of 2017 story, YIMBY and NEW YORK YIMBY's distinction caused the largest real estate publication in New York City to write the headline "Whose backyard is it anyway? Inside the meltdown at New York YIMBY," which thoroughly detailed the allegations by Defendants that were found by this Court to be fraudulent, all the while describing Fedak as New York real estate's best known libertarian polemicist.

40.     As a result of Fedak's expenditures and efforts, the YIMBY Marks have come to signify the high quality of the New York YIMBY Blog, and have acquired incalculable distinction, a valuable reputation, and goodwill among the public as a result of such associations.

## Defendants' Wrongful and Infringing Activities

39.     Upon information and belief, Defendant George is the founder of Yimby Inc. and is its Chief Executive Officer.

40.     Fedak first met George in October 2013.

41.     Upon information and belief, George claimed to be an owner of a marketing agency that worked primarily with luxury rental real estate developments called Drive Talent, Inc. d/b/a Drive Digital ("Drive Digital").

42.     After the initial meeting between George an Fedak, on November 26, 2013, George sent Fedak an email to note that New York YIMBY Blog was mentioned on a popular real estate website called Curbed. He commented on how Fedak had done well with his NewYorkYIMBY.com Website and offered to help him grow it. *See* Exhibit E. George also said he worked out of a Park Avenue South office and had a staff of Web developers.

43.     George offered to pay Fedak $55,000 per year to assist in developing new business for Drive Digital.  Fedak began to be paid by Drive Digital on January 1, 2014. Unexpectedly, after beginning to work for Drive Digital, Fedak discovered that George's Park Avenue South office was only a mailing address, still in use today, at 228 Park Avenue South. At this point, George's "office" consisted of a second-floor unrenovated apartment in Tribeca, New York City ("Tribeca Apartment") that has since been demolished. Fedak never performed any significant amount of work at any actual office owned by George, and meetings to develop business for Drive Digital were almost exclusively held in restaurants or coffee shops.

44.     In 2014, George told Fedak that they had to "formalize" the relationships between Fedak, George, and presumably Drive Digital, in a newly formed company, because George was bringing in investors, including one who was supposedly investing $500,000.

45.    This investor never materialized and Fedak subsequently found out that the investor never seriously considered an investment and that George had lied to him. However, George formed the entity anyways, creating YIMBY Inc.

46.    Upon information and belief, as a part of George's scheme to defraud Fedak, Yimby was incorporated on May 2, 2014, by George.

47.    Fedak's share and role in Yimby have never been formally determined.

48.    George subsequently represented to Fedak that Fedak and he each owned 50% of Yimby, but no share certificate has been issued, and the shares were "uncertificated".

49.    On or about September 4, 2014, unbeknownst to Fedak and without his permission, George on behalf of Yimby and identifying Yimby as the owner, filed the US Trademark Application Ser. No. 86/385,646 (the "Application") for the YIMBY Mark (word mark), which is now registered under Reg. No.4,746,866 (the "'866 Registration") in International Class 35 for "Real estate marketing services" and in International Class 41 for "Newspaper publishing; Online electronic publishing of books and periodicals". *See* Exhibit F.

50.    Fedak learned of the actual Application only after George told him he had applied for the YIMBY Mark (word mark).

51.    Fedak never assigned or otherwise transferred or licensed his rights to the YIMBY Marks to George or Yimby.

52.    The Application contains false statements and misrepresentations that the name of the owner of the YIMBY Mark (word mark) is Yimby, that the owner has exclusive rights to use the YIMBY Mark (word mark) for the identified goods and services, as well as the date of first use of the YIMBY Mark (word mark), which are all crucial to the examination of the Application and issuance of the '866 Registration.

53.     George then informed Fedak when the Application had been accepted by the USPTO, in early 2015, after George had adjusted the Application and upon information and belief, had his own personal lawyer Matthew Greenberg seek registration.

54.     This is another example of George only informing Fedak of things he had already done, instead of asking for permission beforehand. This was also the case with any business decision regarding Yimby, including its formation.

55.     Fedak continued his arrangement with Drive Digital until the relationship began to break down in September of 2016, when Drive Digital, orchestrated by George, and with no explanation, stopped paying Fedak.

56.     Fedak received his last check from Drive Digital in November of 2016, after the relationship had been terminated.

57.     Fedak had no control over Drive Digital finances and had no idea where the funds from major clients had gone or what they had been used for because he was kept in the dark by George in regard to such matters.

58.     At the same time George had taken complete control of the finances of Yimby and, upon information and belief, was collecting all revenue and paying all expenses of Yimby— through Drive Digital as a publisher of the NewYorkYIMBY.com Website.

59.     George offered no valid explanation or report to Fedak as to how Yimby finances were run, only offering "Quickbooks" excerpts that contained numbers that made no sense to Fedak.

60.     On October 5, 2016, Fedak learned that George had "liked" an extremely disturbing and anti-Semitic post on Facebook. Fedak was shocked by this action by George and

could not recover from it. This further deepened the gap between the two and caused the Fedak to terminate any business relationship with George.

61.     Fedak started demanding financial information for Yimby from George but was receiving nothing.

62.     On October 24, 2016, Fedak called a shareholders meeting of Yimby, but the meeting was cancelled by George moments before it was to be started. Hence, Fedak accompanied by his attorney, Steven Wagner, showed up for the meeting at George's Tribeca Apartment, which he insisted was an office, where the meeting was to be held. George, in an apparent attempt to threaten Fedak, called upon a certain employment agreement and gave Fedak and his attorney a copy of the unsigned employment agreement with Yimby, in which Fedak purportedly gave George control of Yimby and which Fedak purportedly transferred all his intellectual property rights to Yimby. George presented only the unsigned employment agreement, and when asked to produce the signed copy of the employment agreement, George said he has it, but cannot find it.

63.     On or about November 1, 2016, George caused Fedak to be locked out of the NewYorkYIMBY.com website by changing authorization for his access. The MailChimp account, which was used to send out NY Yimby newsletters to a mailing list was disabled because MailChimp was "unable to determine ownership of the account" which they classified as "in dispute". George also locked Fedak out of the NY Yimby Facebook page and his NY Yimby Google email account. George also tried to lock Fedak out of the NY Yimby Twitter and Instagram accounts, but was unsuccessful.

64.     By January 1, 2017, Fedak had regained control of most of his intellectual property, including the Website and the entirety of its contents, but excluding the '866 Registration.

65.     On January 11, 2017, George on behalf of Yimby filed a lawsuit against Fedak and NY Yimby under the caption *Yimby, Inc. v. Nikolai Fedak and New York Yimby, LLC*, Case No. 17-CV-223, United States District Court, Southern District of New York (the "Lawsuit"), for trademark infringement, unfair competition, cyber-piracy, copyright infringement, breach of employment agreement, conversion, and other claims.

66.     The centerpiece of the lawsuit as described by counsel for Yimby, was a signed employment agreement (the "Employment Agreement") between Fedak and Yimby, and the '866 Registration, which this Lawsuit seeks to cancel.

67.     The Lawsuit was dismissed in its entirety with prejudice by this Court's order dated February 17, 2017. (the "February 17th Order"), and an order dated February 23, 2017 (the February 23rd Order", and together with the February 17th Order collectively, "Dismissal Orders"). *See* Exhibit G.

68.     Furthermore, this Court found that the Employment Agreement provided by George to this Court dated as of November 14, 2014, between Yimby and Fedak, bears Fedak's forged signature. In the forged Employment Agreement, Fedak allegedly transferred all his rights in the YIMBY Marks to Yimby.

69.     Fedak never transferred his rights to YIMBY Marks or George or Yimby.

70.     The February 23rd Order further prohibits George, Yimby, or anyone acting on their behalf from using the Employment Agreement.

71.     Even after the Lawsuit was dismissed, George continued his misrepresentations against Fedak, with the sole purpose to disrupt Fedak's business and harm both Fedak and NY Yimby.

72.     George sent the Lawsuit documents to several different entities, including New York YIMBY's website hosting provider EUROVPS, which relied upon his fraudulent statement to temporarily return him access.

73.     Beginning on February 21, 2017, New York YIMBY's Website hosting service EUROVPS was interrupted until June of 2017, when it became clear that George's misrepresentations to EUROVPS were based on documents that were found by this Court to be fraudulent and/or forged. At this point in time the Website had recorded a ten-day period of zero traffic due to the disruptions caused by George, substantially damaging Fedak's livelihood and endangering the very existence of New York YIMBY Blog.

74.     Following George's fraudulent submissions and dismissal with prejudice, he activated a domain he controlled dubbed "yimbynews.com." At this point George had already transferred all content from New York YIMBY Blog and newyorkyimby.com onto the new domain "yimbynews.com". George then began posting content independent of Fedak using the New York YIMBY Blog name and likeness on every single page of his new website, and using Fedak's name and likeness alongside NEW YORK YIMBY in the site's "about" section.

75.     George's false statements and forgeries were recognized by this Court promptly, however their damage was far from inconsequential to Fedak and New York YIMBY and persisted well after the dismissal of George's claims, with prejudice, and his referral to the U.S. Attorney's Office for subsequent investigation relating to fraud and forgery.

76.     In April of 2017, after Fedak filed a DMCA takedown complaint with Facebook over George's use of Fedak's logo for NEW YORK YIMBY on a new Facebook page George had entitled "YIMBY New York" that nevertheless used the logo Fedak had created, George filed a response to the complaint with Facebook, misrepresenting under penalty of perjury that "The logo file was created by a graphic designer at YIMBY, Inc in 2014. Fedak is a former employee of the company, is not the designer who created the logo file, and does not retain any personal right to the IP".

77.     George's lawsuit used the forged employment agreement as a basis to transfer Fedak's intellectual property to YIMBY Inc., and by proxy, George.

78.     George's submission under penalty of perjury that "The logo file was created by a graphic designer at YIMBY, Inc in 2014" is a false statement and a fraud.

79.     George's submission under penalty of perjury that "Fedak is a former employee of the company" is a false statement and a fraud. Fedak was never paid any salary and as found by This Court, the employment agreement that purportedly linked Fedak to YIMBY Inc. was a forgery crafted by George himself.

80.     George's submission under penalty of perjury that Fedak "does not retain any personal rights to the IP," is a false statement and a fraud. Fedak worked alongside Web designer John Surdakowski to create the logo in April of 2013, alongside the distinctive and recognizable layout of the Website New York YIMBY itself, for $6,000.

81.     On September 4, 2017, George sent a letter to Euclid Services Ltd – Eurovps.com ("EUROVPS"), misrepresenting that Fedak is infringing on George's trademark rights, and demanded that EUROVPS cancel the Web hosting service to Fedak. Fedak, through his attorneys, contacted EUROVPS seeking continuance of service, or alternatively return of the pre-

paid funds for the service which were paid through June 2019, totaling over $5,000USD. EUROVPS rejected both requests, continuing to cause Fedak irreparable damage. *See* Exhibit H.

82.     At this point George had ceased posting new content on "yimbynews.com" entirely. The last new posts on "yimbynews.com" from August were poorly plagiarized from Fedak's writing on newyorkyimby.com.

83.     At no point was George or Yimby, the owner of the YIMBY Marks or the NewYorkYIMBY.com domain.

84.     Defendants' acts are causing damage, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs and to their valuable reputation and goodwill with the consuming public for which Plaintiffs have no adequate remedy at law.

### As and for A First Cause of Action By Plaintiffs Against Defendants
#### (Federal Unfair Competition and False Designation of Origin)

84.     Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

85.     Defendants' unauthorized use in commerce of the YIMBY Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

86.     Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiffs.

87.     Defendants' conduct as alleged herein is intended to and is likely to cause confusion, mistake or deception as to the origin, source, sponsorship, or affiliation with Plaintiffs.

88.     Long prior to any use of the YIMBY Marks by George and Yimby, Fedak commenced using the YIMBY Marks as a trademark for, *inter alia*, real estate development promotion and marketing.

89.     Fedak has dedicated time, money and effort in advertising, promoting and popularizing its YIMBY Marks and in preserving the good will associated therewith.

90.     Alternatively, or in addition, as the results of Fedak's aforementioned dedicated time, money and effort, YIMBY has come to be recognized as a source for real estate development promotion and marketing.

91.     Yimby was never an owner of the YIMBY Marks.

92.     George was never an owner of the YIMBY Marks.

93.     George and Yimby misrepresented to the USPTO that Yimby is the owner of the YIMBY Mark (word mark), under penalty of perjury.

94.     George and Yimby also misrepresented to the USPTO Fedak's first use date of the YIMBY Mark (word mark) as Yimby's first use date, even though that date predates any date that Fedak and George had even met as well as prior to any date of formation of Yimby.

95.     George has misrepresented to this Court that Fedak had transferred his rights in the YIMBY Marks to Yimby by submitting a forged document, i.e. the Employment Agreement.

96.     Notwithstanding that Yimby never had any right to use the YIMBY Marks, Yimby has continued to offer services similar to NY Yimby under the YIMBY Marks, using the logo created by Fedak in April of 2013, on the new website, "yimbynews.com," (the "Infringing Website") and on new Facebook, Twitter, and Instagram accounts, purporting to be New York YIMBY—using the YIMBY Marks in its entirety and adding the words New York in front of the YIMBY Marks.

97.     Moreover, George and Yimby have caused EUROVPS to cancel a hosting service to NY Yimby, yet again falsely accusing Fedak and NY Yimby of trademark infringement, causing Plaintiffs further damages in managing their business.

98.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

100.    Plaintiffs are entitled to judgment against Defendants on the First Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## As and for A Second Cause of Action By Plaintiffs Against Defendants
### (Federal Trademark Dilution)

101.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

102.    Fedak's YIMBY Marks are distinctive and a "famous marks" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

103.    Fedak's YIMBY Marks became distinctive and famous prior to the Defendants' acts as alleged herein.

104.    Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Fedak's YIMBY Marks.

105.    Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Fedak's YIMBY Marks by undermining and damaging the valuable goodwill associated therewith.

106.    Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

107.    Plaintiffs are entitled to judgment against Defendants on the Second Cause of Action granting among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**As and for A Third Cause of Action By Plaintiffs Against Defendants**
**(Trademark Infringement under N.Y. GEN. BUS. Law §360,** *et seq.***)**

108.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

109.    Defendants' use of the YIMBY Marks as described herein constitutes trademark infringement under New York common and statutory law N.Y. Gen. Bus. Law. §§360-k and 360-o.

110.    Upon information and belief, Defendants' acts were done with knowledge of its violations of law and were done in bad faith and under circumstances where treble damages and attorneys' fees should be awarded to Plaintiffs. As stated in this Court's Opinion and Order dated March 6, 2017 (the "March 6th Order"), "[George] successfully obtained a TRO against Defendants predicated on the forged Employment Agreement. In addition to the forged Employment Agreement, the Court was also presented with Mr. George's false declaration. The Court has no confidence that further litigation by [George] will be above board."

111.     Plaintiffs are entitled to judgment against Defendants on the Third Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, treble damages, reasonable attorneys' fees, and any other remedy provided under N.Y. Gen. Bus. Law §360-m and costs of the action together with prejudgment and post-judgment interest.

### As and for A Fourth Cause of Action By Plaintiffs Against Defendants
### (Unfair Business Practices under N.Y. GEN. BUS. Law §349)

112.     Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

113.     Defendants' use of the YIMBY Marks to promote, market, or sell products and services, including on Defendants' website, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce, and in the furnishing of services to consumers and therefore a violation of N.Y. Gen. Bus. Law. §349 *et seq*.

114.     Defendants, through its content and conduct, is causing a likelihood of confusion as to the source, sponsorship, affiliation, connection, association or approval of Defendants by or with Plaintiff.

115.     Plaintiff has been damaged by Defendants' acts complained of in an amount to be determined at trial, and if Defendants' conduct is allowed to continue, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

116.     Defendants' materially misleading practice of using the YIMBY Marks to identify goods and services provided by Defendants is likely to cause the consuming public at large to be misled as to the true source, sponsorship, or affiliation of the goods and services offered by Defendants and is likely to cause confusion or mistake or to deceive.

117.    Plaintiffs are entitled to judgment against Defendants on the Fourth Cause of Action granting monetary damages in an amount to be proven at trial and injunctive relief prohibiting Defendants from using the YIMBY Marks or any other trade name, trademark, service mark or domain name that is identical to the YIMBY Marks, a mark likely to be confused with the YIMBY Marks or otherwise unfairly competing with Plaintiffs. Without preliminary and permanent injunctive relief, Plaintiffs have no means by which to control the continuing injury to the reputation and goodwill associated with the YIMBY Marks.  No amount of money damages can adequately compensate Plaintiffs if they suffer damage to their reputation and associated goodwill through the false and unauthorized use by Defendants of the YIMBY Marks.

### As and for A Fifth Cause of Action By Plaintiffs Against Defendants
### (Injury To Business Reputation And Unfair Competition Under N.Y. GEN. BUS. §360-L)

118.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

119.    By making unauthorized use in commerce of the YIMBY Marks in connection with similar or identical goods and services, Defendants' unauthorized use of the YIMBY Marks to identify Defendants' services is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Plaintiffs and as to the sponsorship or approval of Defendants' goods or services by Plaintiffs.

120.    Defendants' distributing, marketing, advertising, offering for sale and selling of its goods and services under the YIMBY Marks causes confusion and mistake, deceives and misleads the purchasing public, trades upon Plaintiffs' high-quality reputation, and improperly appropriates to Defendants the valuable goodwill of Plaintiffs.

121.    The aforesaid conduct by Defendants constitutes a likelihood of injury to the business reputation of Plaintiffs in violation of N.Y. Gen. Bus. Law. §360-l.

122.    Plaintiffs are entitled to judgment against Defendants on the Fifth Cause of Action in an amount to be determined at trial, and if Defendants' conduct is allowed to continue and is not enjoined, Plaintiffs and their goodwill and reputation will continue to suffer immediate, substantial, ongoing and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

### As and for A Sixth Cause of Action By Plaintiffs Against Defendants
**(Common Law Trademark Infringement and Unfair Competition)**

123.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

124.    Plaintiff Fedak owns and uses the YIMBY Marks and enjoys common law rights in the State of New York and throughout the United States. Defendants' activities as stated herein constitute unfair competition and trademark infringement of Plaintiff's common law trademark rights in the YIMBY Marks.

125.    Defendants' conduct alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

126.    Plaintiffs are entitled to judgment against Defendants on the Sixth Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, if applicable, reasonable attorneys' fees, if applicable, and costs of the action together with prejudgment and post-judgment interest.

### As and for A Seventh Cause of Action By Plaintiffs Against Defendants
**(False or Fraudulent Registration Under 15 U.S.C. §1120)**

127.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

128.    On or about September 4, 2014, unbeknownst to Fedak, and without his permission, George on behalf of Yimby, identifying Yimby as the owner, filed the US Trademark Application Ser. No. 86/385,646 for the YIMBY Mark (word mark), which is now the '866 Registration in International Class 35 for "Real estate marketing services" and in International Class 41 for "Newspaper publishing; Online electronic publishing of books and periodicals".

129.    Yimby has procured the '866 Registration in the USPTO for the YIMBY Mark (word mark) by a false or fraudulent declaration or representation, oral or in writing, or otherwise by false means.

130.    With respect to the '866 Registration, the following statements were made by declaration under 18 U.S.C. §1001 by George, who is identified on the document as a "President" of YIMBY, on or about September 4, 2014, as submitted to the USPTO in the Application:

The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; and/or if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

131.    In the above-mentioned statement in this paragraph 124, the following statement is false: "the applicant is the owner of the trademark/service mark sought to be registered".

132.    In the above-mentioned statement in this paragraph 124, the following statement is false: "the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant".

133.    In the above-mentioned statement in this paragraph 124, the following statement is false: "the specimen(s) shows the mark as used on or in connection with the goods/services in the application".

134.    In the above-mentioned statement in this paragraph 124, the following statement is false: "the applicant is entitled to use the mark in commerce".

135.    In the above-mentioned statement in this paragraph 124, the following statement is false: "the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application."

136.    In the above-mentioned statement in this paragraph 124, the following statement is false: "The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive".

137.    In the above-mentioned statement in this paragraph 124, the following statement is false: "all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true".

138.    In addition, the noted document containing the above-mentioned declaration in paragraph 111 also falsely states "In International Class 035, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 09/28/2011, and first used in commerce at least as early as 09/28/2011, and is now in use in such commerce. The applicant is submitting one (or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n)digital images of a website currently used in commerce".

139.    The noted document containing the above-mentioned declaration in paragraph 111 also falsely states "In International Class 037, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 09/28/2011, and first used in commerce at least as early as 09/28/2011, and is now in use in such commerce. The applicant is submitting one (or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) digital images of a website currently used in commerce".

140.    The noted document containing the above-mentioned declaration in paragraph 111 also falsely states "In International Class 041, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 09/28/2011, and first used in commerce at least as early as 09/28/2011, and is now in use in such commerce. The applicant is submitting one (or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) digital images of a website currently used in commerce".

141.     The foregoing false statements were known by their maker to be false in that George, at the time of filing the Application, knew that Fedak was and is the owner of the YIMBY Marks.

142.     In addition, George later forged Fedak's signature on that certain Employment Agreement between Fedak and Yimby, allegedly transferring the rights in the YIMBY Marks from Fedak to Yimby.

143.     This Court has found in dismissing the Lawsuit that certain Employment Agreement was in fact never signed by Fedak, and that the Employment Agreement bears Fedak's forged signature. As described in the March 6th Order, "it became apparent to the Court that an employment agreement purportedly signed by Mr. Fedak ("Employment Agreement") had been forged by Plaintiff's CEO, Daniel George."

144.     In fact, among the documents made of record by YIMBY is a screenshot of NewYorkYIMBY.com website, submitted by George as a proof of the YIMBY Marks being used in commerce in connection with the applied for goods and services. As stated above neither George nor YIMBY have at any time been owners of the NewYorkYIMBY.com website.

145.     The aforementioned false statements, made under oath, are material to YIMBY's Application in that the name of the Applicant, owner of the YIMBY Marks and that owner/Applicant's exclusive rights to use the applied for mark for the identified goods and services are important to the examination of the Application by the USPTO.

146.     George intended that his false statement be acted upon by the USPTO by issuing a registration to Yimby.

147.    The USPTO had no reason to suspect that any or all the statements made by George were false and reasonably relied upon such statements. On information and belief, the USPTO relied upon one or more of George's above-mentioned false statements.

148.    As the result of issuance of the '866 Registration to YIMBY, Fedak has been damaged. Among other things, Defendants are holding themselves out as owners of the YIMBY Marks.

149.    Fedak has been injured and damaged in consequence of the aforementioned acts of fraud in the procurement of the '866 Registration.

### As and for A Eight Cause of Action By Plaintiffs Against Defendants
#### (Cancellation/Transfer of the '866 Registration)

150.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

151.    Defendants acts as identified above, including false and fraudulent misrepresentations in the Application by George caused the USPTO to issue the '866 Registration.

152.    George intended that his false statement be acted upon by the USPTO by issuing a registration to Yimby.

153.    The USPTO had no reason to suspect that any or all the statements made by Defendants were false and reasonably relied upon such statements. On information and belief, the USPTO relied upon one or more of George's above-mentioned false statements.

154.    As the result of issuance of the '866 Registration to YIMBY, Fedak has been damaged. Among other things, Defendants are holding themselves out as owners of the YIMBY Marks.

155.    Fedak has been injured and damaged in consequence of the aforementioned acts of fraud in the procurement of the '866 Registration.

156.    Plaintiffs have no adequate remedy in law.

## As and for A Tenth Cause of Action By Plaintiffs Against Defendants
### (Declaratory Judgment)

157.    Plaintiffs repeat and reallege all prior allegations, as if fully set forth herein.

158.    Fedak is the owner of the YIMBY Marks.

159.    Fedak has invested substantial time, money and resources in marketing, advertising and promoting real estate development and promotional services offered under the YIMBY Marks, which have enormous goodwill and is invaluable assets to Fedak. For the last six years Fedak has invested substantial time, money and resources in the creation, development, production, marketing and sales of the YIMBY Marks. Fedak advertises heavily on social media, and the content he creates is regularly syndicated by trade publications and national newspapers. Fedak has also created strong word-of-mouth buzz. These investments in sales, content, and advertising have created an exceptionally strong mark.

160.    Yimby has no ownership interest in the YIMBY Marks. Fedak never transferred his rights to the YIMBY Marks to Yimby. Fedak never transferred his rights to the YIMBY Marks to George. The only document Defendants relied upon in their assertions to having any rights in the YIMBY Marks, the Employment Agreement, has been found by this Court to bear the forged signature of Fedak.

161.    As the result of issuance of the '866 Registration to YIMBY, Fedak has been damaged. Among other things, Defendants are holding themselves out as owners of the YIMBY Marks.

162.    Fedak has been injured and damaged in consequence of the aforementioned acts of fraud in the procurement of the '866 Registration.

163.    There is an actual controversy between the parties having adverse legal interest of sufficient immediacy in reality which warrants the issuance of a declaratory judgement.

164.    Plaintiffs have no adequate remedy in law.

**WHEREFORE**, Plaintiffs request judgment against Defendants as follows:

1.    Declare that Nikolai Fedak is the owner of the YIMBY Marks.

2.    Declare that the YIMBY Mark (word mark) in the U.S. Trademark Registration No. 4,746,866 has been obtained through misrepresentation and misstatement to the United States Patent and Trademark Office and hence is not protectable and is unenforceable and therefore declaring the same null and void and cancelled.

3.    Direct that United States Patent and Trademark Office to cancel with prejudice, or in alternative to transfer to Nikolai Fedak, the '866 Registration or any and all registrations for the mark consisting of, incorporating or containing the YIMBY Mark (word mark) or any counterfeit, copy, confusingly similar variation or colorable imitation thereof on any state or federal trademark registry that has been filed by Defendants.

4.    Declare that Defendants have violated; Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

5.    Declare that Defendants have violated N.Y. GEN. BUS. §360-L, and N.Y. GEN. BUS. LAW §349 and committed common law trademark infringement and unfair competition.

6.    Grant an injunction preliminarily and permanently enjoining the Defendants, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing

persons or entities who receive actual notice of the Court's order by personal service or otherwise from:

  a.  manufacturing, distributing/providing, selling, marketing, advertising, promoting or authorizing any third party to manufacture, distribute, provide, sell, market, advertise or promote any goods or services bearing the YIMBY Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation or colorable imitation of the YIMBY Marks;

  b.  engaging in any activity that infringes Plaintiffs' rights in the YIMBY Marks;

  c.  engaging in any activity constituting unfair competition with Plaintiffs;

  d.  engaging in any activity that is likely to dilute the distinctiveness of Plaintiffs' the YIMBY Marks;

  e.  making or displaying any statement, representation or depiction that is likely to lead the public or the trade to believe that (i) the services provided by Defendants are in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Plaintiffs or (ii) Plaintiffs' goods and services are in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Defendants;

  f.  using or authorizing any third party to use in connection with any business, goods or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, domain name, or trade dress that falsely associate such business, goods and/or services with Plaintiffs or tend to do so;

g.  registering or applying to register any trademark, service mark, domain name, trade name or other source identifier or symbol of origin consisting of or incorporating the YIMBY Marks or any other mark that infringes or is likely to be confused with the YIMBY Marks, or any goods or services of Plaintiffs, or Plaintiffs as their source; and

h.  aiding, assisting or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

7.  Order that Defendants account to Plaintiffs for Defendants' profits and to pay any damages sustained by Plaintiffs arising from the foregoing acts of unfair competition, fraud and unfair business practices.

8.  Grant such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods.

9.  Award Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

10.  Direct that Defendants account to and pay over to Plaintiffs all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) enhanced as appropriate to compensate Plaintiffs for the damages caused thereby.

11.     Award Plaintiffs punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

12.     Declare that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiffs their costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

13.     Award Plaintiffs interest, including prejudgment and post-judgment interest, on the foregoing sums.

14.     Award such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

15.     Plaintiffs request a trial by jury in the above captioned matter, as provided by Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 13, 2017

New York, New York

Respectfully submitted,

/s/ William R. Samuels

William R. Samuels
Scarinci Hollenbeck
Attorney for Plaintiffs