UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
NIKOLAI FEDAK, and NEW YORK YIMBY,                          :
LLC,                                                        :
                                                            :
                               Plaintiffs,                  :    17 Civ. 8825 (KPF)
                                                            :
                       v.                                   :    OPINION AND ORDER
                                                            :
YIMBY, INC. and DANIEL S. GEORGE,                           :
                                                            :
                               Defendants.                  :
                                                            :
------------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      The instant matter offers a smorgasbord of claims and counterclaims served up by two former business partners and their respective business entities. Prior litigation between these parties (where the plaintiff and defendant roles were reversed) was dismissed with prejudice after the presiding judge found that Defendants had submitted fraudulent documents. In the present action, Defendants bring counterclaims for trademark, copyright, and Digital Millennium Copyright Act ("DMCA") infringements, as well as for defamation, injurious falsehood, and tortious interference with business relations under New York state law. Plaintiffs move to dismiss the counterclaims, relying principally on the prior litigation. For the reasons set forth in the remainder of this Opinion, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND[1]

### A. The First Action

This lawsuit is not the first between these parties. In January 2017, YIMBY, Inc. ("Yimby") brought a prior action (the "First Action") against Nikolai Fedak and New York YIMBY, LLC ("NY Yimby"), alleging trademark infringement under federal and state law, unfair competition, false advertising, cyber-piracy, copyright infringement, breach of employment agreement, conversion, economic harm, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, *prima facie* tort, unjust enrichment, and self-dealing. *See Yimby, Inc.* v. *Fedak*, No. 17 Civ. 223 (PAC). (PAC Dkt. #1 (Jan. 11, 2017)).[2] Shortly after the First Action was filed, Judge Crotty determined that Yimby had submitted forged documents; he dismissed the action pursuant to Federal Rule of Civil Procedure 41(a)(2) and referred the matter to the United States Attorney's Office for the Southern District of New York for investigation. (PAC Dkt. #31 (Feb. 16, 2017)). Thereafter, following

---

[1] For ease of reference, docket entries relating to the prior action before the Honorable Paul A. Crotty are cited using the convention "(PAC Dkt. #___)," while docket entries relating to the instant lawsuit are cited using the convention "(Dkt. #___)."

The facts set forth herein are drawn from Defendants' First Amended Answer with Counterclaims (the "FAAC" (Dkt. #45)). For convenience, the Court will refer to Plaintiffs' memorandum in support of their motion to dismiss Defendants' counterclaims as "Pl. Br." (Dkt. #52); Defendant George's memorandum in opposition as "Def. Opp." (Dkt. #59); and Plaintiffs' reply as "Pl. Reply" (Dkt. #60).

Defendant YIMBY, Inc. takes no position on this motion. (*See* Dkt. #68). For this reason, while references to the counterclaims and the underlying conduct use "Defendants" in the plural, references to the arguments opposing the motion to dismiss use "Defendant" in the singular and pertain solely to Defendant George.

[2] "YIMBY" is an acronym for the "Yes In My Back Yard" movement that favors increased real estate development. It exists in opposition to the "NIMBY," or "Not In My Back Yard," movement.

2

Yimby's failure to comply with a court order to produce the forged documents to Fedak and NY Yimby, Judge Crotty ordered that

> the February 16, 2017[,] dismissal of this action pursuant to Fed. R. Civ. P. 41(a)(2) is with prejudice ... and ... that [Yimby], [Yimby's] CEO, Daniel George, or anyone acting on their behalf are prohibited from using the Employment Agreement and any version of the Shareholder Agreement or Promissory Note purportedly signed by Mr. Fedak in any action, proceeding, matter, or claim between the parties to this action, and/or their agents, servants, and/or employees[.]

(PAC Dkt. #33 (Feb. 23, 2017)). Four months later, Judge Crotty held both Yimby and its CEO, Daniel George, in civil contempt and awarded sanctions. (PAC Dkt. #63 (June 22, 2017)).

## B. The Current Action

A few months later, a second litigation was filed and the roles were reversed: Nikolai Fedak and NY Yimby (collectively, "Plaintiffs"), brought this action against Yimby and Daniel George (collectively, "Defendants"), on November 13, 2017. (Dkt. #1). Following the grant of leave from the Court for additional time to answer the complaint, Defendants filed an initial answer on April 2, 2018. (Dkt. #31, 41). On April 23, 2018, Defendants filed the FAAC. (Dkt. #45).

Plaintiffs moved to dismiss the FAAC's counterclaims on May 25, 2018. (Dkt. #51). Defendants filed a memorandum in opposition on June 26, 2018 (Dkt. #59), and Plaintiffs replied on July 10, 2018 (Dkt. #60). On December 10, 2018, after a change in its board composition, Defendant Yimby filed a

supplemental letter with the Court indicating that it took no position on Plaintiffs' motion to dismiss. (Dkt. #68).

## DISCUSSION

**A. Applicable Law**

    **1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint. *A.V.E.L.A., Inc.* v. *Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (internal citations omitted). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Allco Fin. Ltd.* v. *Klee*, 861 F.3d 82, 94-95 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). In determining a Rule 12(b)(6) motion to dismiss, "the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor[.]" *Doe* v. *Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

## 2.    *Res Judicata*

Plaintiffs' arguments focus on the preclusive effect of Judge Crotty's dismissal order. "To determine whether the doctrine of *res judicata* bars a subsequent action, we consider whether [i] the prior decision was a final judgment on the merits, [ii] the litigants were the same parties, [iii] the prior court was of competent jurisdiction, and [iv] the causes of action were the same." *Corbett* v. *MacDonald Moving Servs.*, 124 F.3d 82, 87-88 (2d Cir. 1997). As to the fourth factor, "[*r*]*es judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim." *EDP Med. Computer Sys., Inc.* v. *United States*, 480 F.3d 621, 626 (2d Cir. 2007). Significantly, however, "[w]hile claim preclusion [or *res judicata*] bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis* v. *Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000).

## 3.    **Defamation**

In addition to their preclusion arguments, Plaintiffs contend that Defendants' state-law causes of action are inadequately pleaded, so the Court addresses the elements of each, beginning with defamation, in the remainder of this section.

A statement "which *tends* to disparage a person in the way of his office, profession or trade" is defamatory per se. *Davis* v. *Ross*, 754 F.2d 80, 82 (2d Cir. 1985). "[As] falsity — or lack of substantial truth — is an element of a New

5

York defamation claim, it follows that a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court." *Tannerite Sports, LLC* v. *NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).  The task of courts evaluating a defamation claim at the motion to dismiss stage is to determine "whether the contested statements are reasonably susceptible of a defamatory connotation." *Armstrong* v. *Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995); *see also Kelly* v. *Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("On a motion to dismiss or for summary judgment, the issue is not whether the court regards the language as libelous, but whether it is reasonably susceptible of such a construction.").

"It is settled that expressions of opinion, in contrast to assertions of fact, are privileged and, however offensive, may not be the subject of an action for defamation."  *Weiner* v. *Doubleday & Co.*, 74 N.Y.2d 586, 593 (1989).  "[D]etermining whether a given statement expresses fact or opinion may be difficult.  The question is one of law for the court.…  The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion."  *Steinhilber* v. *Alphonse,* 68 N.Y.2d 283, 290 (1986) (internal citations omitted).

The New York Court of Appeals has further instructed that

> [New York law distinguishes] between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener, and a statement of opinion that is accompanied by a recitation of the facts

6

> on which it is based or one that does not imply the existence of undisclosed underlying facts. The former are actionable not because they convey "false opinions" but rather because a reasonable listener or reader would infer that the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed. In contrast, the latter are not actionable because ... a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.

*Gross* v. *N.Y. Times Co.*, 82 N.Y.2d 146, 153-54 (1993) (internal citations, alterations, and quotation marks omitted).

### 4. **Injurious Falsehood**

"Injurious falsehood, which is also referred to as 'trade libel,' 'product disparagement,' and other variations thereof, is a tort separate and distinct from the tort of defamation." *Henneberry* v. *Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006). "The New York Court of Appeals has stated that injurious falsehood lies where the statement is confined to denigrating the quality of the [plaintiff's] business' goods or services." *Id.* (citation and quotation marks omitted). For instance, "a claim for injurious falsehood was proper where one clothing store alleged that another competing clothing store's employees made disparaging misrepresentations to its customers regarding the quality and authenticity of the products sold at the former's store." *Id.* at 471-72. In contrast, statements that "plaintiff's store sold bogus items were properly characterized as slanderous per se because a reasonable juror could conclude that the speaker was impugning plaintiff's integrity or business methods." *Id.* at 472 (citation and quotation marks omitted).

### 5. Tortious Interference

Finally, a claim for tortious interference with prospective economic advantage under New York law requires a "showing that: [i] the plaintiff had business relations with a third party; [ii] the defendants interfered with those business relations; [iii] the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and [iv] the defendants' acts injured the relationship." *Lombard* v. *Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002).

### B. Analysis

#### 1. The Challenged Counterclaims Are Not Barred by *Res Judicata*

Plaintiffs argue that certain of Defendants' counterclaims are barred by *res judicata*, specifically the counterclaims for federal and common-law trademark infringement, copyright infringement and related DMCA violations, and conversion. (Pl. Br. 7-10). As to these counterclaims, Plaintiffs argue that (i) Judge Crotty's determination in the First Action was a final judgment on the merits; (ii) the parties in both actions are either identical or in privity; (iii) the two actions are in the same court, which is of competent jurisdiction for both, and (iv) the counterclaims either were or could have been raised in the First Action. (*Id.* at 4-10).

Defendant George, the only defendant to oppose Plaintiffs' motion, does not contest the first three of these conclusions. As to the fourth, Defendant contends that the counterclaims in the current action had not accrued at the time Judge Crotty issued his decision, and therefore that the claims in the two

8

actions are different. (Def. Opp. 8-16). Plaintiffs urge, in contrast, that the counterclaims allege nothing "that amounts to a new claim"; that the facts alleged in the First Action and the current action are related; and thus that the First Action's dismissal with prejudice applied to the counterclaims. (Pl. Reply 3). Reading the FAAC in the instant action side-by-side with the Second Amended Complaint ("SAC" (PAC Dkt. #11)) in the Prior Action, makes clear that Defendants' trademark, copyright, DMCA, and conversion counterclaims are not barred by *res judicata*.

### a. The Trademark, Copyright and DMCA Claims

The SAC filed in the First Action alleged claims for trademark and copyright infringement, as well as DMCA violations, stemming from allegations that Fedak hijacked Yimby's Domain Name and Weblog, and then improperly displayed the "'YIMBY' trademark and other trademarks and content created and owned by Yimby" on the www.newyorkyimby.com website, in connection with the offer of advertising and other services. (SAC ¶¶ 54-55, 61, 166-73). The SAC characterizes these allegations as "continuing violations." (*Id.* at ¶¶ 172-73). In the instant motion, Plaintiffs summarize the allegations as follows: "[T]he First Action, stated that Mr. Fedak hijacked the Domain Name and weblog, deleted the Yimby, Inc. Terms of Use and replaced Yimby, Inc.'s Copyright Notice with his own." (Pl. Br. 10 (citing SAC ¶ 128)).

The FAAC in this action again brings counterclaims for trademark and copyright infringement, and for violation of the DMCA. (FAAC ¶¶ 118-29). Here, however, Defendants have limited their counterclaims to alleged

9

wrongdoing that "has occurred after the dismissal of the prior action on February 16, 2017." (*Id.* at ¶ 3). Specifically, the relevant allegations in the FAAC include:

- "YIMBY, Inc. is the owner of U.S. trademark Registration No. 4,746,866 for the mark 'YIMBY' for real estate marketing services, newspaper publishing and online electronic publishing of books and periodicals."

- "On June 5, 2017, Fedak set up a 'New Quadcore Server' with third-party hosting provider EuroVPS and copied and published, without authorization, an exact replica of YIMBY, Inc.'s prior server's contents, which included copying the copyrighted content and then publishing it on newyorkyimby.com."

- "Since June 13, 2017[,] Fedak has been publishing new content using YIMBY, Inc.'s copyrighted work and registered trademark on the 'New Quadcore Server' [residing] at the domain newyorkyimby.com."

- "Moreover, since August 1, 2017[,] Fedak has been publishing email newsletters from the MailChimp server using YIMBY, Inc.'s copyrighted work, including its … registered trademark 'YIMBY', approximately six times per week."

- "On or around June 28, 2017, Fedak purposefully, without permission or authority, improperly gained access to YIMBY, Inc.'s MailChimp account[.]"

- "To this day, Fedak continues to operate the 'New Quadcore Server' and publish copyrighted content and infringing on YIMBY, Inc.'s trademark at the domain newyorkyimby.com as well as operating the Discourse Server publishing copyrighted content and infringing on YIMBY, Inc.'s trademark at the domain newyorkforums.com to YIMBY, Inc.'s exclusion[.]"

- "Similar calls and notifications confusing YIMBY, Inc. with Fedak and New York YIMBY, LLC have haunted (and continue to haunt) George and YIMBY, Inc. at least once a month since July, 2017."

(*Id.* at ¶¶ 19, 28, 30-32, 38, 54).

10

Plaintiffs argue that, in both actions, Defendants' trademark, copyright, and DMCA claims and counterclaims have the same subject, and "recite the same underlying facts," such that the counterclaims in the FAAC should be barred by Judge Crotty's dismissal of the prior claims with prejudice. (Pl. Br. 8). Defendant George responds that these counterclaims had not accrued at the time of Judge Crotty's dismissal, because they are based on conduct that occurred after the dismissal on February 16, 2017. (Def. Opp. 10-13). For instance, Defendant asserts that

> [t]he only facts that are the same between the trademark infringement claim brought in the prior action and the counterclaim for trademark infringement brought in the pending litigation is the trademark being infringed, "YIMBY" bearing Registration No. 4746866, which is owned by YIMBY, Inc.... The prior lawsuit alleges infringing activities by Fedak which took place starting in October 2016 and continued through February 16, 2017, the date the prior lawsuit was dismissed, while the counterclaims for trademark and copyright infringement center around infringing activities in June 2017.

(*Id.* at 10). In Defendant's view, "when Fedak copied the protected intellectual property to a new and different server on June 5, 2017 and associated the domain newyorkyimby.com with the new server, a new and different cause of action accrued for trademark and copyright infringement that did not exist prior to February 16, 2017." (*Id.* at 13).

The parties' dispute boils down to whether Judge Crotty's dismissal of the First Action with prejudice bars new claims arising from ongoing conduct of the *same type* alleged in the First Action, or solely new claims arising from the specific pre-February 2017 acts previously alleged. As is clear from the earlier

11

legal discussion, the latter position is the correct one. The law is clear that *res judicata*

> does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims.

*Curtis*, 226 F.3d at 139 (internal citations omitted). Accordingly, to the extent that Defendants' counterclaims in the current action arise from conduct that occurred after January 25, 2017, i.e., the date of the SAC, they are not barred by *res judicata*.

### b. The State-Law Conversion Claim

Relatedly, Plaintiffs argue that Defendants' state-law counterclaim for conversion is also precluded. In this regard, Defendants have alleged that, "[o]n August 1, 2017, Fedak improperly gained access to the 'YIMBY' administrative account on yimbyforums.com and downloaded a copy of the entire contents of the yimbyforums.com server despite never having paid for the YIMBY forums software license, Discourse Server hosting services, associated domain names or server contents." (FAAC ¶ 104). As with the trademark, copyright, and DMCA counterclaims addressed in the preceding section, the conduct underlying the conversion counterclaim is alleged to have occurred after the filing of the SAC in the First Action, and is not barred by *res judicata*.

Plaintiffs attempt to distract from this conclusion by pointing out that the "creation dates for the domain names in question predate the First Action[.]" (Pl. Br. 10; FAAC ¶ 100). That observation is entirely irrelevant, as it is the alleged *conversion* of, and not the *creation* of, the domain names that forms the basis of the counterclaim.

In sum, *res judicata* does not bar Defendants' counterclaims.

### 2. Defendants Have Adequately Pleaded Some, But Not All, of Their State-Law Counterclaims

#### a. Defendants Have Failed to Plead Defamation

Separately, Plaintiffs challenge the adequacy of certain of Defendants' state-law counterclaims, and it is here that they have a measure of success. The Court begins with the defamation counterclaim alleged on behalf of Defendant George. (FAAC ¶¶ 55-65). The FAAC alleges that, "around June 28, 2017, Fedak purposefully, without permission or authority, improperly gained access to YIMBY, Inc.'s MailChimp account and sent a libelous email to YIMBY, Inc.'s 25,000 subscribers." (*Id.* at ¶ 62). The purportedly libelous email, which is attached as an exhibit, states in relevant part:

> Dan George is a Fraud.... On Thursday, June 22nd, 2017, the Honorable Judge Paul A. Crotty found Dan George and "YIMBY Inc." in civil contempt.... [T]he Court found Dan George is a fraud who is both in contempt of Federal Court orders, and has been referred to the US Attorney's Office for the Southern District of New York for investigation relating to fraud and forgery.

(*Id.*, Ex. C).

Plaintiffs argue for dismissal on the basis that the alleged statement is an opinion and therefore entitled to absolute immunity from defamation

13

claims. (Pl. Br. 11). They are correct. "A 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based." *Steinhilber*, 68 N.Y.2d at 289. Here, the statement that "Dan George is a fraud" is an opinion accompanied by a recitation of the facts on which it is based. As a result, the statement "is readily understood by the audience as conjecture." *Gross*, 82 N.Y.2d at 153-54 (internal citation omitted).

Defendant George offers the faintest of responses to this conclusion: "[A]rgument that the statement is merely Fedak's opinion is nothing more than an affirmative defense that Plaintiffs-Counter Defendants can rely on as a defense to the Counterclaim. Asserting this affirmative defense does not invalidate the sufficiency of the pleading." (Def. Opp. 19). The Court is not persuaded. It finds that the statement is a pure opinion and immunized from a defamation claim. Plaintiffs' motion to dismiss Defendants' defamation counterclaim is granted.

### b. Defendants Have Failed to Plead Injurious Falsehood

With respect to Defendants' counterclaim for injurious falsehood, the alleged conduct occurred, once again, after the filing of the SAC, and thus — contrary to Plaintiffs' argument — is not barred by *res judicata*. (*See* Pl. Br. 13). Nonetheless, Defendants have not sufficiently pleaded the elements of an injurious falsehood claim.

The significant distinction here is "between, on the one hand, statements concerning a party's integrity or business methods, and, on the other hand, statements denigrating the quality of a party's goods or services, with the

14

former providing a basis for a claim of defamation and the latter providing a basis for an injurious falsehood claim." *Henneberry*, 415 F. Supp. 2d at 472 (internal citations and quotation marks omitted); *see also Ruder & Finn Inc.* v. *Seaboard Sur. Co.*, 52 N.Y.2d 663, 670-71 (1981) ("Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies.... Where, however, the statement is confined to denigrating the quality of the business' goods or services, it could support an action for disparagement[.]").

The statement "Dan George is a fraud" concerns integrity or business methods, not the quality of goods and services. The distinction is especially clear in this case because the statement is based on Judge Crotty's finding of contempt, and his concurrent referral to the United States Attorney's Office, which were responses to conduct by Defendants during the litigation that was lacking in integrity, and not to any aspect of Yimby's goods or services. (FAAC, Ex. C). Accordingly, Defendants' allegations are properly characterized as a defamation claim, not a claim for injurious falsehood.

Defendant George counters that "Fedak's defamatory statement against George, the co-founder and Chief Executive Officer of the company, is materially linked to the quality of the services provided by YIMBY, Inc.," because "the reputation and credibility of the company's Chief Executive Officer and co-founder is inextricably linked to the reputation and credibility of the company." (Def. Opp. 20-21). However, that the statement may have harmed the company's reputation or credibility does not alter the fact that it

15

concerned integrity or business methods, and not the quality of goods and services. (*See* Pl. Reply 6). Accordingly, Plaintiffs' motion to dismiss Defendants' injurious falsehood counterclaim is granted.

### c. Defendants Have Adequately Pleaded Some, But Not All, of Their Tortious Interference Counterclaims

The FAAC alleges that Yimby "had existing or prospective business relationships with customers" of its advertising services, and that Fedak tortuously interfered with those relationships by "removing and/or disabling advertisements" from Yimby's websites, and by sending the "Dan George is a fraud" email on June 28, 2017. (FAAC ¶¶ 80-82). Plaintiffs argue that Defendants have failed to plead the first element of a counterclaim for tortious interference under New York law, namely, that Defendants "had business relations with a third party," *Lombard*, 280 F.3d at 214.

In this regard, Plaintiffs maintain that Defendants have not shown that they had *pre-existing* business relationships that were interfered with. (Pl. Br. 14-15). They further point out that Yimby's advertising contract with third party RFR Holdings LLC was not set to go into effect until July 1, 2017, after the "Dan George is a fraud" email was sent on June 28, 2017, and reason from this fact that "there was no relationship" between Yimby and RFR Holdings at the time of the email. (*Id.*). Plaintiffs argue that the "same is the case for GTIS Partners," and further that Defendants "were allegedly providing services to [Berlin Rosen] through December 2017, which was well after" the email. (*Id.* at 15). As a result, Plaintiffs conclude that Defendants' relationship with Berlin Rosen "was clearly not affected by the June 28, 2017 e-mail." (Pl. Reply 7).

Plaintiffs' arguments regarding pre-existing business relationships lack merit.  As Defendant George correctly points out, a business relationship begins at least at the time of contracting, not at the time of performance when services are actually provided.  (Def. Opp. 22).  And the mere fact that Defendants may have provided some services to Berlin Rosen following the allegedly damaging e-mail does not disprove that the e-mail harmed the relationship.  (*See id.* at 23).

That said, the FAAC's claim of tortious interference with "*prospective* business relationships" (FAAC ¶ 80 (emphasis added)), does not adequately plead a business relationship sufficient to support a tortious interference claim under New York law.  *See Lombard*, 280 F.3d at 214.  Accordingly, Plaintiffs' motion to dismiss Defendants' counterclaim for tortious interference is granted to the extent that Defendants plead interference with prospective business relationships, and denied to the extent that Defendants plead interference with pre-existing business relationships.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiffs' motion to dismiss Defendants' counterclaims is GRANTED IN PART and DENIED IN PART.  The counterclaims that remain are those for state and federal trademark infringement, copyright infringement, DMCA violations, conversion, and tortious interference with pre-existing business relationships.

The Clerk of Court is directed to terminate the motion at docket entry 51. The parties are directed to submit a joint status letter proposing next steps in this matter by **January 25, 2019**.

SO ORDERED.

Dated: December 20, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge